PEOPLE ex rel. FOREST COMMISSION v. CAMPBELL (two cases).

(Supreme Court, Appellate Division, Third Department. November 16, 1898.)

1. TAX SALES—CANCELLATION—REIMBURSEMENT OF PURCHASER.

　　After a judgment had been rendered for the state, determining that defendant had no title in land from which he had taken logs, the comptroller canceled a sale of the land to the state for taxes, on payment of certain

taxes by defendant, and transferred to him the tax-sale certificate given to the state at such sale. *Held*, on reversal of the comptroller's action, that defendant was not entitled to reimbursement for improvements of no value to the state made by him after such cancellation, though the state was required, as a condition of reversal, to reimburse him for the taxes paid.

**2. SAME.**

One purchasing land at a sale for taxes of a certain year after a deed has been executed to the state under a sale for taxes of another year is entitled to reimbursement by the state.

**3. SAME.**

On a reversal of a determination of the state comptroller canceling a sale of land for taxes to the state on payment of the taxes by defendant, and transferring to him a tax-sale certificate, he will be required to execute a deed to the state, as a condition of receiving reimbursement for taxes paid by him.

Certiorari in two cases by the people, on the relation of the forest commission, against Frank Campbell, comptroller of the state, to review his action in canceling a tax sale. Reversed.

For prior decisions in these cases, see 82 Hun, 338, 31 N. Y. Supp. 499; 152 N. Y. 51, 46 N. E. 176; 22 App. Div. 170, 48 N. Y. Supp. 183; 156 N. Y. 64, 50 N. E. 417.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Theodore E. Hancock, Atty. Gen., by William P. Cantwell, for relator.

Weeds, Smith & Conway, for respondent.

MERWIN, J. The only remaining question to be considered in these cases is, what direction shall be given or condition imposed by way of restitution to Benton Turner, for whose benefit these proceedings are defended, for moneys paid by him into the treasury of the state, or laid out on the premises in question? The cancellation of December 30, 1891, was made upon the condition that "all the taxes for which the said lands were so sold, and all other taxes that are now a lien upon said land," should be paid. It appears that on December 31, 1891, Benton Turner paid into the state treasury the sum of $9,538.21. This, as indicated by the papers submitted to us on the subject of restitution, was made up as follows:

| | |
|---|---:|
| Taxes of 1866, 1867, 1868, 1869, 1870, for the nonpayment of which the land had been sold in 1877, with interest to December 31, 1891 | $2,128 47 |
| Taxes of 1861, 1862, 1863, 1864, 1865, for the nonpayment of which the land had been sold at the tax sale of 1890, with interest to December 31, 1891 | 6,705 59 |
| Taxes of 1886, 1887, 1888, 1889, 1890, with interest to December 31, 1891 | 704 15 |
| Total | $9,538 21 |

At the tax sale of 1890 above referred to, the property was bid in by the state, and a certificate issued to it. This certificate was on December 31, 1891, assigned by the comptroller to Smith M. Weed, and at the same date an assignment thereof made by Weed to Julia H.

Turner. On the back of this assignment, as certified from the comptroller's office, it is noted that a conveyance was made to Julia H. Turner December 29, 1892. On the 8th May, 1886, Mr. Turner, through his attorney, paid into the state treasury the sum of $1,306.30, for redemption of the premises from the tax sale of 1881 made for the taxes of the years 1871 to 1876. On December 27, 1887, he paid into the treasury the sum of $1,124.61, for redemption of the premises from the tax sale of 1885 made for the taxes of 1877, 1878, 1879, and for 1853, 1854, and 1855. An affidavit of Mr. Turner is presented, in which it is stated: That after the cancellation of December 30, 1891, he, believing his title perfect, entered upon the land, and made preparation for extensive lumbering operations,—building a dam across Cold brook at an expense of $3,500; building sluiceways and improving the brook, to make it available for running logs, at an expense of $3,000; building several camps, barns, and other buildings for use in lumbering business, at an expense of $5,350; building roads and bridges at an expense of $1,500. That these buildings and improvements are practically useless to him, except for the purpose of utilizing the timber on said premises, except that the main camp was to some extent used in aid of the lumbering operations on an adjoining tract (township 27) owned by him. That in June, 1892, after this expense was incurred, an injunction was served upon him, on behalf of the state, restraining him from entering on the land. On the part of the relator, an affidavit of Cyrus P. Whitney, a civil engineer, is presented, in which it is, in substance, stated that he is familiar with the lands in question, and with lumbering; that the improvements mentioned by Turner were made long before December 31, 1891, and for the purpose mainly of lumbering on Turner's adjoining tract, and many of the buildings are on that tract; that the cost of the buildings is largely overstated, and many of them are now rotted down. It also appears on behalf of the relator that on the 6th June, 1891, the people of the state recovered judgment against Turner for $2,198.60. On the affirmance of this at general term, a further judgment was recovered against Turner for $72.04, May 18, 1894; and, on the affirmance of this by the court of appeals, a further judgment of $151.75 on February 17, 1898. These judgments are shown to be unpaid. The recovery in the original judgment was for the value of logs taken by the defendant therein from the premises in question about March 1, 1887. It is not suggested by the relator that Turner has taken any other timber, or had any other use of the property, that should be considered on the question now before us. The defendant (or, rather, Turner through the defendant) claims that, as a condition of the reversal of the determination of the comptroller, the amount paid by him on December 31, 1891 (being the sum of $9,538.21), should be restored to him. Before Turner is in a position to ask this, he should restore to the state all the rights it had under the certificate given to it on the 1890 sale, so that there will be no outstanding claim against the state or the property by reason of the transfer of that certificate, or any conveyance that may have been given thereunder. Such restoration being made, Turner then would be in a position to ask that

the money that he paid December 31, 1891, be paid back to him upon the reversal of the comptroller's determination.

It is also claimed on behalf of Turner that he should be reimbursed for his expenses for improvements as stated in his affidavit. This is on the theory that he made the expenses after December 31, 1891, in the belief that his title was perfect. It is denied that they were made after that date. If made at the time he says, he knew then that it had been determined in an action at law against him by the state that he had no title; and it can hardly be said that, under the circumstances appearing in the case, he had a right to suppose that the relator would acquiesce in the action of the comptroller upon December 30, 1891. Beyond this, it is quite apparent from the affidavit of Mr. Turner himself that the improvements described by him were and are of no benefit or use to the relator or the state for the purposes of its forest preserve, but, on the contrary, detrimental to it. The state has received nothing by reason of such expenses. I fail to see any good reason for our considering those expenses upon the subject of restitution.

The amounts paid by Turner on May 18, 1886, and December 27, 1887, for redemption from tax sales of 1881 and 1885, stand on a different basis. The deed to the state upon the tax sale of 1877, which is restored by a reversal of the determination in question, was given prior to such tax sales. If the deed was good and operative, the state upon the sales in 1881 and 1885 was selling its own property, and Turner, by redeeming, got nothing. We therefore reach the following conclusions:

The determination of the comptroller should be reversed, with costs, unless within 60 days after the entry of the judgment herein, and service of a copy thereof on the defendant's attorneys, the defendant's attorneys file with the clerk of this court for delivery as directed by the court, and serve on the attorneys for relator, an instrument or instruments, duly executed, which shall operate to transfer and restore to the state any and all right or interest which it parted with by reason of the transfer of the certificate of the 1890 tax sale, or any conveyance thereunder. In case such instruments are so filed and served, then such reversal is made upon the condition that within 90 days after the filing and service of said instruments the relator deposit or cause to be deposited in court, subject to the order of this court, for the benefit of said Benton Turner or his assigns, the said sum of $9,538.21, with interest thereon to the time of such deposit; also, the said sums of $1,306.30 and $1,124.61, with interest from their respective dates of payment, less the said three judgments. Upon such deposits being made, then the said reversal shall be absolute, and the instrument or instruments above referred to shall be delivered to the relator for the state, and the said moneys shall, upon application, be paid to said Turner or his assigns. In case such deposit is not made within said time, or such further time as may be given by this court upon proper application at the foot of the judgment, then the writs of certiorari shall be quashed.

Judgment ordered in accordance with the opinion, to be settled before the court upon notice. All concur.